IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JON TIRK,

          Plaintiff,

v.                                                      Civil Action No. 2:14-889

DUBROOK, INC.,

          Defendant.

# MEMORANDUM OPINION

**Conti, Chief District Judge**

## I. Introduction

This matter is before the court upon the motion for summary judgment (ECF No. 24) filed by defendant DuBrook, Inc. ("DuBrook"). In his first amended complaint (ECF No. 19), plaintiff Jon Tirk ("Tirk"), asserts claims of wrongful termination and retaliatory discharge in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, the Pennsylvania Human Relations Act ("PHRA"), 43 PA. STAT. §§ 951 *et seq.*, and Pennsylvania law. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

## II. Factual Background[1]

From 2003 until 2013, Tirk was employed by DuBrook, a concrete and building materials supplier, as a general maintenance worker. (Combined Statement of Material Facts ("C.S.F.") (ECF No. 38) ¶ 1.) Tirk consistently received favorable evaluations throughout the course of his employment. (Id. ¶ 27.) He also experienced a series of injuries to his left knee that occasionally limited his ability to work. (Id. ¶ 7).

---

[1] The factual background is taken from the Combined Statement of Material Facts. (ECF No. 38.)

The first of Tirk's injuries occurred in January 2010, when he slipped on ice near his home and tore his medial meniscus. (Id. ¶ 7.) In December 2010, he slipped at work and dislocated his left kneecap. (Id.) The December 2010 incident caused Tirk to miss six weeks of work, after which he returned to full-duty work with no restrictions. (Id. ¶ 8.)

Following his December 2010 injury, Tirk filed a workers' compensation claim and received workers' compensation benefits. (Id. ¶ 9.) DuBrook did not contest, challenge, or object to Tirk's entitlement to or receipt of benefits. (Id. ¶ 10.)

In February 2012, Tirk underwent arthroscopic surgery for the meniscal tear in his left knee. (Id. ¶ 11.) The surgery was successful and Tirk returned to work after four weeks with limited restrictions on his ability to kneel, squat, or climb. (Id. ¶ 12.) DuBrook honored Tirk's work restrictions for several months until he could return to unrestricted duty. (Id. ¶ 14.)

On July 29, 2013, Tirk slipped on a ladder at work and reinjured his left knee. (Id. ¶ 15.) The following day, Tirk completed an incident report and submitted it to his co-worker, Barry Hinderliter. (Id. ¶ 19.) His injury did not cause him to miss any work, but his physician imposed limited workplace restrictions on climbing, prolonged kneeling, and squatting. (Id. ¶ 16.) Those restrictions were subsequently revised to eliminate the restriction on climbing and modify his general restrictions to "light work." (Id. ¶ 17.) DuBrook honored each of those restrictions. (Id. ¶ 18.) Tirk later submitted a claim petition seeking workers' compensation benefits for that incident. (Id. ¶ 20.)

Meanwhile, DuBrook suffered a net loss of $101,562.00 in 2013 as the result of an economic downturn in the construction industry. (Id. ¶ 2.) On August 30, 2013, DuBrook terminated the employment of Tirk and two of his co-workers, Barry Hinderliter and Larry Scott. (Id. ¶¶ 4-5.) DuBrook characterized the terminations as a reduction in force and explained that

the moves were necessary because of the company's poor financial condition. (Id. ¶ 4). DuBrook also eliminated all overtime work for all employees. (Id. ¶ 3.) DuBrook explained to Tirk that his maintenance job had been selected for elimination because the company felt that the responsibilities of his position could be handled by other existing employees who could also provide skilled mechanical work, which Tirk could not. (Id. ¶ 6.)

Of the other two employees removed by DuBrook, Hinderliter was terminated for poor performance and subsequently replaced. (Id. ¶ 5.) Scott retired and was not replaced. (Id.)

### III. Procedural History

Tirk commenced this action on July 7, 2014. (ECF No. 1.) He filed an amended complaint on October 29, 2014. (ECF No. 19.)

On March 20, 2015, DuBrook filed the instant motion for summary judgment with brief in support. (ECF Nos. 24, 27.) Tirk responded to the motion on June 30, 2015 (ECF No. 32), and DuBrook filed a reply on July 30, 2015. (ECF No. 37.) This motion is now fully briefed and ripe for review.

### IV. Standard of Review

Summary judgment may only be granted where the moving party shows that there is no genuine dispute as to any material fact, and that a judgment as a matter of law is warranted. FED. R. CIV. P. 56(a). Pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential to his or her case, and on which he or she will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In evaluating the evidence, the court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor. Watson v. Abington Twp., 478 F.3d 144, 147 (3d Cir. 2007). The burden is initially

on the moving party to demonstrate that the evidence contained in the record does not create a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004). A dispute is "genuine" if the evidence is such that a reasonable trier of fact could render a finding in favor of the nonmoving party. McGreevy v. Stroup, 413 F.3d 359, 363 (3d Cir. 2005). Where the nonmoving party will bear the burden of proof at trial, the moving party may meet its burden by showing that the admissible evidence contained in the record would be insufficient to carry the nonmoving party's burden of proof. Celotex Corp., 477 U.S. at 322. Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond his or her pleadings and designate specific facts by the use of affidavits, depositions, admissions or answers to interrogatories showing that there is a genuine issue of material fact for trial. Id. at 324. The nonmoving party cannot defeat a well-supported motion for summary judgment by simply reasserting unsupported factual allegations contained in his or her pleadings. Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989).

## IV. Discussion

### A. Unlawful Termination under the ADA

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to the . . . discharge of employees." 42 U.S.C. § 12112(a). Tirk's discrimination claim is governed by the familiar burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[2] Pursuant to that framework, the plaintiff bears

---

[2] DuBrook suggests that the United States Supreme Court's decision in Gross v. FBL Fin. Servs., 557 U.S. 167 (2009), "cast doubt on the continued applicability of the McDonnell Douglas burden shifting paradigm in the context of cases requiring proof of causation under the 'but for' standard" applicable to ADA claims. See Defendant's Brief in Support ("Def. Br.") (ECF No. 27) at 10. However, the Court of Appeals for the Third Circuit has explicitly determined that the holding in Gross "does not conflict with [the] continued application of the McDonnell Douglas paradigm" to discrimination cases. Smith v. City of Allentown, 589 F.3d 684, 691 (3d Cir. 2009). Following Smith, courts in this circuit have continued to utilize the McDonnell Douglas framework in both age and disability discrimination cases. See, e.g., Wilson v. Mobilex USA Inc., 406 F. App'x 625, 626 (3d Cir. 2011) ("ADEA . . . claims are governed by the familiar burden-shifting framework set out in McDonnell Douglas.");

the initial burden of establishing a *prima facie* case of discrimination. If he is able to do so, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the adverse employment decision. Id. at 802. The plaintiff "must then establish by a preponderance of the evidence that the employer's proffered reasons were merely a pretext for discrimination." Id.

To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show "(1) that he is disabled within the meaning of the ADA, (2) that he is otherwise qualified for the job, with or without reasonable accommodations, and (3) that he was subjected to an adverse employment decision as a result of discrimination." Sulima v. Tobyhanna Army Depot, 602 F.3d 177, 185 (3d Cir. 2010). An individual qualifies as disabled under the ADA if he or she has: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) [is] regarded as having such an impairment." 42 U.S.C. § 12102(1).[3]

Here, Tirk is proceeding solely on the theory that DuBrook regarded him as disabled. DuBrook responds that Tirk cannot satisfy the first and third *prima facie* elements of his claim because he failed to adduce any evidence to establish a causative link between his alleged disability and his termination. DuBrook also contends that Tirk cannot demonstrate that DuBrook's articulated explanation for Tirk's dismissal was a pretext for unlawful discrimination.

   1. ***Prima facie* case**

---

Baughman v. Cheung Enters., LLC, No. 13-1511, 2014 WL 4437545, at *8 (M.D. Pa. Sep. 9, 2014) (citing Smith for the proposition that ADA, ADEA, and PHRA claims are each subject to the McDonnell Douglas framework). This court will do the same.

[3] In 2008, Congress responded to several Supreme Court decisions limiting the scope of "disabled" under the ADA by enacting the ADA Amendments Act of 2008 ("ADAAA"), Pub.L. No. 110-325, 122 Stat. 3553, in order to "reinstat[e] a broad scope of protection" under the ADA. Id. § 2(b), 122 Stat. at 3554. The ADAAA became effective on January 1, 2009. Id. § 8, 122 Stat. at 3559. Because each of the events giving rise to Tirk's disability discrimination claim took place after January 1, 2009, the ADAAA applies to his claims.

In order to establish a disability under the "regarded as" prong of the ADA's disability definition, a plaintiff must establish "that he . . . has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3). This analysis "focuses not on [the plaintiff] and his actual abilities, but rather on the reactions and perceptions of the persons interacting or working with him." Kelly v. Drexel Univ., 94 F.3d 102, 108-09 (3d Cir. 1996).

There is no dispute that DuBrook was aware of Tirk's ongoing knee problems. The parties agree that "'the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate . . . that the employer regarded the employee as disabled.'" Lewis v. Genesis Healthcare Corp., 826 F.Supp.2d 765, 775 (E.D. Pa. 2011) (quoting Kelly, 94 F.3d at 109); Warshaw v. Concentra Health Services, 719 F.Supp.2d 484, 496 (E.D. Pa. 2010) ("Defendants correctly respond that . . . mere knowledge of plaintiff's [impairment] is insufficient to show that plaintiff was regarded as disabled."). Because the ADA "requires the court to determine whether the plaintiff was 'subjected to an action prohibited' by the ADA 'because of an actual or perceived' impairment," most courts have concluded that causation is an integral part of the threshold finding that a plaintiff is regarded as having a disability. See Baughman v. Cheung Enters., LLC, No. 13-1511, 2014 WL 4437545, at *12 (M.D. Pa. Sep. 9, 2014); see also, e.g., DiGiosia v. Aurora Health Care, Inc., 48 F.Supp.3d 1211, 1218 (E.D. Wis. 2014) ("'[B]y incorporating the 'because of' clause into the definitional section, the ADAAA (somewhat strangely) builds causation into the very definition of disability itself . . . [Thus], [t]o qualify as disabled under the regarded-as clause, the employee must show not only that the employer knew about her impairment, but that she was subjected to prohibited discrimination

6

*because of* the impairment.") (emphasis in original).[4]  Tirk must also establish a causal connection between the adverse employment action and his perceived disability in order to satisfy the third element of his *prima facie* case.  See, e.g., Decker v. Alliant Tech., LLC, 871 F.Supp.2d 413, 428 (E.D. Pa. 2012) (noting that a plaintiff "must show that his perceived disability was a 'determinative factor' in [defendant's] decision to terminate his employment.") (citing Watson v. Se. Penn. Transp. Auth., 207 F.3d 207, 214-15 (3d Cir. 2000)); Mengel v. Reading Eagle Co., No. 11-6151, 2013 WL 1285477, *4 (E.D. Pa. Mar. 29, 2013) ("At the summary judgment stage, an ADA plaintiff must provide evidence that supports a logical inference of causation between the alleged disability and the adverse employment action.").

In the instant case, Tirk attempts to establish the requisite causal link by relying entirely on the temporal proximity between his last injury and the date of his termination.  It is well-settled that temporal proximity is a relevant consideration in establishing causation.  See, e.g., Warshaw, 719 F.Supp.2d at 496 ("[Temporal proximity] has, either standing alone or in concert with other theories, already been accepted by a number of courts as sufficient to survive summary judgment.").  Tirk submitted an incident report to DuBrook concerning his latest knee injury on July 30, 2013, and was terminated a month later, on August 30, 2013.  He suggests that the one-month gap between these events is sufficient, on its own, to establish an inference that he was regarded as disabled.

There is no bright line rule with respect as to what temporal gap is sufficiently narrow to create such an inference.  See Hibbard v. Penn-Trafford School Dist., No. 13-622, 2014 WL

---

[4] In contrast, a handful of courts have opined that a plaintiff can establish the first element of an ADAAA claim simply by demonstrating that the employer was aware of the plaintiff's impairment.  See, e.g., Rubano v. Farrell Area Sch. Dist., 991 F.Supp.2d 678, 693 (W.D. Pa. 2014).  In their briefs, both parties reject this more lenient standard.  See Def. Br. (ECF No. 27) at 5; Pl. Opp. (ECF No. 33) at 3-4 (agreeing that a plaintiff must establish causation in order to show that he was "regarded as" disabled).  The court need not resolve the appropriate standard to apply here because even if causation is not required for the first element, the parties agree that it certainly is required under other elements of Tirk's claim.  See DiGiosia, 48 F.Supp.3d at 1219 n. 5 (characterizing the distinction as "purely academic" because "a plaintiff must always demonstrate causation" in an ADA case).

7

640253, at *18 (W.D. Pa. Feb. 19, 2014) (noting that the Court of Appeals for the Third Circuit "has not specified a strict formula for what is considered to be too long of a gap between protected activity and adverse action"). "[T]he weight of temporal evidence is context-specific and 'must be considered with a careful eye to the specific facts and circumstances encountered.'" Proudfoot v. Arnold Logistics, LLC, 59 F.Supp.3d 697, 708 (M.D. Pa. 2014) (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir. 2000)). Courts that have relied on a temporal link to overcome summary judgment have typically required an extremely short time period or the existence of additional circumstantial facts to support causation. See Booze v. Wetzel, No. 13-2139, 2015 WL 5173937, at *15 (M.D. Pa. Sep. 2, 2015) (noting, in the context of retaliation, that the Court of Appeals for the Third Circuit's jurisprudence "'suggests that the temporal proximity must be measured in days, rather than in weeks or months, to suggest causation without corroborative evidence.'") (quoting Conklin v. Warrington Tp., No. 06-2245, 2009 WL 1227950, at *3 (M.D. Pa. Apr. 30, 2009)); see also LaGatta v. Pa. Cyber Charter Sch., 726 F.Supp.2d 578, 587-88 (W.D. Pa. 2010) (finding evidence of causation where employer terminated plaintiff within a week of learning about her bipolar disorder); Bullock v. Balis & Co., Inc., No. 99-748, 2000 WL 1858719, *7 (E.D. Pa. Dec. 19, 2000) (finding that plaintiff's termination one week after disclosure of ADD was suggestive of causation); Stewart v. Bally Total Fitness, No. 99-3555, 2000 WL 1006936, at *5 (E.D. Pa. July 20, 2000) (timing of plaintiff's demotion one month after nervous breakdown, coupled with evidence that plaintiff's co-workers had frequently taunted him based on his perceived disability, was suggestive of discrimination). Relevant corroborative facts include "evidence of a pattern of antagonism or retaliatory motive during the intervening period" or evidence that the employer provided

8

"inconsistent reasons for the adverse employment action." Bush v. Donahoe, 964 F.Supp.2d 401, 425 (W.D. Pa. 2013).

As an initial matter, it is noteworthy that the temporal gap in this case is not as narrow as Tirk suggests. Although Tirk's most recent injury to his left knee occurred only a month before his termination, DuBrook first became aware of Tirk's knee troubles in December 2010, when Tirk dislocated his kneecap in a workplace injury and missed six weeks of work. (C.S.F. (ECF No. 38) ¶¶ 7-8.) That incident occurred almost three years prior to his termination. Consequently, Tirk's suggestion that the temporal gap is only one month is belied by the record. See, e.g., Haulbrook v. Michelin N. Am., 252 F.3d 696, 705 (4th Cir. 2001) (denying a temporal proximity argument because "intimations of a medical condition" had begun much earlier) ; Santora v. Red Clay Consol. Sch. Dist., 901 F.Supp.2d 482, 492 (D. Del. 2012) (although plaintiff was terminated only seven days after she filed a workers' compensation appeal, her initial workers' compensation claim had been filed five months earlier, "undermin[ing] the argument that there is a strong temporal connection giving rise to the inference of causation."); Warshaw, 719 F.Supp.2d at 496 (noting that adverse actions taken "shortly after an employer *learns of the disability*" may be suggestive of causation) (emphasis added).

The record is devoid of corroborative evidence to support Tirk's temporal proximity argument. Tirk acknowledges that no employee or agent of DuBrook ever characterized him as disabled or indicated that they thought he was unable to perform his job. (C.S.F (ECF No. 38) ¶¶ 23-24.) To the contrary, the record reveals that DuBrook was patient and accommodating with respect to Tirk's various knee injuries. Tirk was never disciplined for missing work as the result of his injuries or subjected to any negative comments about his impairments or limitations. (Id. ¶¶ 22, 25.) DuBrook never objected to any of the workplace restrictions imposed by Tirk's

physicians or challenged his entitlement to workers' compensation benefits following his previous knee injuries. (Id. ¶¶ 10, 21.) Simply put, the record lacks any corroborative facts to support Tirk's assertion that the timing of his termination is suggestive of causation.

Because Tirk failed to adduce sufficient evidence to establish that he was terminated as the result of a perceived disability, he cannot make out a *prima facie* case of discrimination under the ADA. Nonetheless, for the sake of thoroughness, the court will also address Tirk's claim under the pretext prong of the McDonnell Douglas framework.

### 2. Legitimate nondiscriminatory reasons

Assuming for the sake of argument that Tirk could satisfy his *prima facie* burden, the burden shifts to DuBrook to articulate "some legitimate, nondiscriminatory reason" for the adverse employment action. McDonnell Douglas, 411 U.S. at 802-03. The burden on defendant at this juncture is "relatively light," and can be satisfied by the introduction of "evidence which, taken as true, would permit the conclusion that there was a non-discriminatory reason for the unfavorable employment decision . . . ." Fuentes, 32 F.3d at 763 (citations omitted). In the instant case, DuBrook asserts that the company's poor economic condition necessitated a reduction in force and that Tirk's position was selected for elimination because the company believed Tirk's job responsibilities could be absorbed by existing employees who were also capable of performing skilled mechanical work. The court is satisfied that DuBrook's proffered explanation for Tirk's termination and the evidence offered in support of that explanation are sufficient to meet its burden of production.

### 3. Pretext

The final step in the McDonnell Douglas analysis requires the plaintiff to show "by a preponderance of the evidence" that the employer's proffered explanation is merely a pretext for

unlawful discrimination. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). In order to survive summary judgment, the plaintiff must satisfy at least one of the two prongs articulated by the Court of Appeals for the Third Circuit in Fuentes:

> [T]he plaintiff must point to some evidence, direct or circumstantial, from which the fact-finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a . . . determinative cause of the employer's action.

Fuentes v. Perskie, 32 F.3d at 764; Watson v. SEPTA, 207 F.3d 207, 214-15, 220 (3d Cir. 2000) (noting that the determinative factor, or "but for" test, applies to disability discrimination claims).

### (a) Prong One

To discredit the employer's articulated reason, the plaintiff does not need to produce evidence that necessarily leads to the conclusion that the employer acted for discriminatory reasons, Sempier v. Johnson & Higgins, 45 F.3d 724, 728 (3d Cir. 1995), or produce additional evidence beyond his *prima facie* case. Fuentes, 32 F.3d at 764. A plaintiff must, however, demonstrate such

> weaknesses, implausibilities, inconsistencies, incoherencies [sic], or contradictions in the employer's proffered legitimate reasons [such] that a reasonable factfinder could rationally find them "unworthy of credence" and hence infer that the proffered nondiscriminatory reason "did not actually motivate" the employer's action.

Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 644 (3d Cir. 1998) (citations omitted). The district court under this prong must focus on the legitimate, nondiscriminatory reason offered by the employer. Ezold v. Wolf, Block, Schorr and Solis–Cohen, 983 F.2d 509, 531 (3d Cir.1992) (A "plaintiff does not establish pretext, however, by pointing to criticisms of members of the non-protected class, or commendation of the plaintiff, in categories the

defendant says it did not rely upon . . . ."). The court is neither permitted to get involved in the subjective business decisions of the employer, nor set its own employment standards for the employer, unless there is evidence of discrimination. Id. at 527. Cases analyzed under this prong usually survive a motion for summary judgment when the employer's stated reason for termination is so implausible that a reasonable fact-finder could not believe it. Wildi v. Alle–Kiski Medical Center, 659 F.Supp.2d 640, 670 (W.D. Pa.2009).

DuBrook's articulated reason for Tirk's termination is that the company reduced the size of its workforce as the result of an economic downturn and selected Tirk's position for elimination because his general maintenance responsibilities could be absorbed by other employees who offered a broader range of skills. Although Tirk alleges the existence of invidious discrimination, he failed to challenge any of DuBrook's proffered reasons. Tirk does not dispute that the company was experiencing an economic downturn and needed to take steps to improve its financial condition. (C.S.F. (ECF No. 38) ¶¶ 2-3.) Tirk also concedes that he was the only unskilled laborer employed by DuBrook and that his general maintenance responsibilities could be absorbed by other existing employees with broader skill sets. (Id. ¶ 6.) See Stacy v. LSI Corp., 544 F. App'x 93, 97 (3d Cir. 2013) (noting that the absorption of a terminated employee's job responsibilities by other current employees is consistent with a reduction in force explanation). Finally, Tirk concedes that his job responsibilities were, in fact, absorbed by other employees following his termination and that he was never replaced. (Id.) In short, Tirk concedes the veracity of each of DuBrook's proffered explanations for his termination.

In the absence of any evidence to refute DuBrook's articulated basis for his termination, Tirk focuses on the other two individuals included in the reduction in force, Hinderliter and

Scott. Tirk notes that one of those employees, Hinterliter, had performance issues that supported his termination and that his position was subsequently filled. (C.S.F. (ECF No. 38) ¶ 5.) The other individual, Scott, voluntarily retired and was not replaced. (Id.) Tirk suggests that these facts undermine DuBrook's characterization of his termination as a reduction in force. However, "poor employee performance is a proper ground for selecting employees to dismiss in a reduction in force." Alam v. HSBC Bank USA, N.A., No. 07-3540, 2009 WL 3096293, at *9 (S.D.N.Y. Sep. 28, 2009). The same is true of an employee's willingness to accept voluntary retirement. See, e.g., Gambill v. Duke Energy Corp., 456 F. App'x 578, 586 (6th Cir. 2012) ("The voluntary resignation of [other employees affected by a reduction in force] is not evidence of pretext."); Howard v. Steris Corp., 886 F.Supp.2d 1279, 1300 (M.D. Ala. 2012) (noting that a voluntary early retirement program is an appropriate element of a reduction in force). Tirk's arguments with respect to Hinderliter and Scott simply have no bearing on whether his own termination was the result of discrimination. Consequently, Tirk failed to create a triable issue of fact with respect to pretext under prong one.

**(b) Prong Two**

In order to demonstrate pretext pursuant to the second Fuentes prong, a plaintiff may attempt to demonstrate that: (1) the defendant previously discriminated against him; 2) defendant discriminated against other disabled employees; or (3) defendant previously treated similarly situated non-disabled employees more favorably. Simpson, 142 F.3d at 644-45. Tirk does not specifically address this second prong of the Fuentes test and, in any event, the record contains no evidence that might support any of these three considerations.

Because Tirk cannot satisfy either prong of the Fuentes test, he failed to create a triable issue of fact with respect to his disability discrimination claim. There is no evidence from which

a reasonable jury could conclude that DuBrook terminated Tirk because the company regarded him as disabled or that DuBrook's stated rationale for Tirk's termination was a pretext for unlawful discrimination. Summary judgment will be entered in favor of DuBrook with respect to Count I.

### B. PHRA Claim

In his brief in opposition to DuBrook's motion for summary judgment, Tirk concedes that summary judgment is appropriate with respect to his PHRA claims. (Pl. Opp. (ECF No. 33) at 8.) Consequently, summary judgment will be entered in favor of DuBrook as to Count II.

### C. Retaliation

Pennsylvania's Workers' Compensation Act ("WCA"), 77 PA. STAT. §§ 1 *et seq.*, prohibits an employer from discharging an at-will employee in retaliation for filing a workers' compensation claim. Shick v. Shirley Lumber, 716 A.2d 1231, 1237-38 (Pa. 1998). To prevail on a workers' compensation retaliation claim, a plaintiff must establish that: (1) he engaged in protected activity; (2) he suffered an adverse employment action either after or contemporaneous with the protected activity; and (3) that there is a causal connection between the protected activity and the adverse action. See Theriault v. Dollar General, 336 F. App'x 172, 175 (3d Cir. 2009) (predicting that the Pennsylvania Supreme Court would apply the same elements to a WCA claim that are used to analyze Title VII retaliation claims).

To satisfy the causation element of his claim, Tirk again relies entirely on the temporal proximity between the alleged protected activity – his filing of an incident report on July 30, 2013 – and the date of his termination, August 30, 2013. As explained above, temporal proximity alone may be sufficient to establish causation, but the "'timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be

inferred.'" Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003) (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997)). "[T]he Third Circuit Court of Appeals has suggested that a temporal proximity of two days is sufficient to establish causation . . . whereas a temporal proximity of ten days is sufficient to establish causation only when accompanied by other evidence of . . . wrongdoing." Booze, 2015 WL 5173937, at *15 (citing Farrell, 206 F.3d at 279 n. 5 (two days); Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 189 (3d Cir. 2003) (ten days)). If the temporal proximity is not unusually suggestive, "a court may consider whether the record evidence, as a whole, is sufficient to raise an inference of causation, and in doing so may consider evidence of ongoing antagonism or retaliatory animus, inconsistencies in the employer's articulated reasons for terminating the employee, or any other evidence in the record sufficient to support the inference of retaliatory animus." Kahan v. Slippery Rock Univ. of Pa., 50 F.Supp.3d 667, 701 (W.D. Pa. 2014) (citing Farrell, 206 F.3d at 280).

For the same reasons relied on by the court in addressing Tirk's ADA claim, *supra*, the court concludes that the record as a whole is not suggestive of causation with respect to Tirk's retaliation claim. The record is devoid of any evidence of antagonism, retaliatory animosity, or any other actions that might support an inference of retaliation. To the contrary, DuBrook accommodated each of Tirk's medical restrictions, granted him ample time to recover when his knee injuries caused him to miss work, and accepted Tirk's entitlement to workers' compensation benefits. (C.S.F (ECF No. 38) ¶¶ 10, 21-25.) The evidence adduced to show inconsistencies in DuBrook's articulated reasons for Tirk's termination is the same evidence offered to show pretext, which the court has already concluded is insufficient. Under these circumstances, Tirk cannot establish a prima facie case for retaliation. Even if Tirk had adduced sufficient evidence to show a prima facie case, he did not establish pretext for the reasons

already discussed in the context of his discrimination claim. Therefore, DuBrook is entitled to summary judgment with respect to Count III.

## V.     Conclusion

For the foregoing reasons, DuBrook's motion for summary judgment will be granted. An appropriate order follows.

By the court:

/s/ Joy Flowers Conti
Joy Flowers Conti
Chief United States District Judge

Dated: February 4, 2016